GseeN, Judge,
delivered the opinion of the court:
This suit is brought to recover $33,394.80 as a balance due for architectural services.
It appears that under the Act of Congress of January 7, 1925 (43 Stat. 724), the construction was authorized for the necessary buildings of the United States Industrial Reformatory to be located at Chillicothe, Ohio. The original act provided that prisoners confined in the several United States penitentiaries, prisons, or reformatories should be employed in the construction of the buildings thereof. The Act of May 29, 1928 (45 Stat. 883, 906), made a preliminary appropriation for the purpose of carrying out the project and authorized the Secretary of the Treasury, if in his discretion it would be impracticable to have the plans therefor prepared *574 in the office of the Supervising Architect of the Treasury-Department, to “contract for all or any portion of such work to be performed by such suitable person or firm as he may select.” In accordance with this provision, the Secretary selected the plaintiff as a suitable person to prepare the plans, drawings, designs, specifications, and estimates necessary and entered into a contract with him for that purpose on October 18,1928. The contract is set out in full in Exhibit A attached to the petition and the portions thereof which bear specially upon the matters involved in this suit are set out verbatim in the findings. A reading of these provisions shows that the work to be performed and the manner in which payment was to be made were specified in detail.
Plaintiff promptly entered into the performance of the contract and performed the work contemplated therein including changes and additions ordered by the defendant. He was engaged during a period of approximately five years in the performance of his services on the project, and was at the expense of maintaining an office with clerical force employing almost constantly a number of technical experts, sometimes as many as fourteen working exclusively on this job. Plaintiff and the officials of the Bureau of Prisons made a detailed study of the requirements of the project which resulted in the preparation and submission of preliminary plans as required under division A of the contract. On March 12, 1929, the plans so prepared and submitted were approved by the Secretary of the Treasury and the Attorney General. In accordance with the contract, plaintiff was subsequently paid architectural fees on the estimated cost of $2,807,000 as set forth therein. The' controversy in the case arises under claims made by the plaintiff for work under what are commonly called change orders, with one exception which will be hereinafter noted.
There are four items upon which plaintiff seeks a recovery:
(1) $1,724.80 as a balance due by reason of the elimination by the defendant of ground lighting and garage and fire engine building;
(2) $7,500 as a balance due for redesigning and making new working drawings for mess hall and kitchen, and for *575 revision of design of school and auditorium (assembly hall and chapel);
(3) $20,650 for a design of the buildings described in paragraph (2) above; or, in the alternative, $10,420.44 as an arbitrated amount due under the decision of the Supervising Architect of the Treasury pursuant to the provisions of the contract;
(4) $3,520 for working drawings for a low pressure steam distribution system and a centralized hot water system.
The evidence shows that as the work progressed a controversy arose between the plaintiff and the Director of Prisons, the latter claiming that the cost of construction of the project in accordance with the plans, drawings, and details submitted by the plaintiff would exceed the limit of the appropriations made therefor. The plaintiff claims that this objection was unfounded. The controversy between the two became acrimonious and apparently considerable feeling was engendered between them. Each seems to have been partly right and partly wrong, but we have made no finding thereon because under our view of the law of the case what took place between the two is immaterial for several reasons. The important question is as to what matters were in disagreement or dispute between the plaintiff and defendant and how they were settled.
We think that all of the claims of plaintiff arising out of change orders were settled by the decision of the Supervising Architect in accordance with the provisions of the contract and that this will appear from a consideration of the evidence as shown by the findings.
It appears that the plaintiff was required to submit a proposal for redesigning the mess hall and kitchen together with assembly hall and chapel, and school building. Plaintiff prepared plans for redesigning these buildings, which plans have been referred to in a discussion of the evidence as the second set, but the drawings were never approved, it apparently having been considered that they could not have been carried out without exceeding the appropriation although the Treasury Department after-wards admitted that they could have been. The plaintiff was instructed to prepare a new set of drawings and *576 did so, this last or third set representing a new design without any overlapping or utilization of the previous ones as shown by the Treasury letter to which reference will hereinafter be made. A controversy and dispute arose as to what should be paid the plaintiff for the second and third sets of the drawings. Plaintiff made a certain proposal with reference to the settlement of these matters and there was correspondence in regard thereto but no definite agreement was reached or concluded. Plaintiff claimed to be entitled to receive $2,500 for the second set of plans under a proposition of settlement accepted by the Treasury Department and to be entitled to payment for the third set in accordance with the contract. The $2,500 was paid and a controversy again arose as to whether it was in payment for the second plans or in settlement of all that was due plaintiff under the change orders as claimed by defendant. Finally plaintiff asked to have the matters in dispute submitted to the Supervising Architect to determine how much was due him, in accordance with the provisions of the contract when disputes arose over work done under change orders. The results of this submission are summarized in a letter written in behalf of the Treasury Department to the Comptroller General by the Director of the Procurement Division thereof dated July 26, 1934, which reviewed the matter in dispute and stated the facts in relation thereto. This letter, the material parts of which are set out verbatim in the findings, is we think the best kind of evidence of the facts recited therein. It shows definitely that the Treasury understood that the $2,500 was paid for drawing what is called the second set of plans and that a new set of drawings was ordered and prepared representing a “distinctly new design showing no overlapping or utilization of the previous ones”. It also shows that plaintiff’s claim for further compensation was submitted to the Supervising Architect pursuant to the terms of the contract and that he found plaintiff to be entitled to additional compensation therefor in the sum of $10,420.44. The payment of this amount was accordingly recommended. The letter, when considered together with all the other evidence bearing on this matter, amply sup *577 ports plaintiff’s alternative claim for compensation for the third, set of plans in the sum found by the Supervising Architect. In this connection it should also be said that it is unreasonable to believe that the plaintiff prepared two additional sets of plans and specifications under change orders, each one worth according to the ordinary scale of architect’s fees as shown in the letter over $10,000, and agreed to accept $2,500 as payment for both.
Counsel for defendant call attention to the fact that the Treasury Department eventually withdrew its recommendation for payment of plaintiff’s claim in the sum of $10,-420.44 pursuant to the decision of the Supervising Architect, and also to the opinion of the Assistant Attorney General, who held that the matter was not a proper subject of arbitration before the Supervising Architect for two reasons, first, because there had been an agreement that the $2,500 should be in full payment of the second and third sets of drawings, but we have found the fact to be otherwise. Moreover, the question of whether there was an agreement was within the scope of the matter submitted to the Supervising Architect. The other objection was that the second set of plans was never approved by the Attorney General, but we think it clear that under the terms of the contract the approval of the Attorney General was necessary only to the preliminary sketches for the “development scheme” as provided by division A of the contract. (See the last paragraph of the portion of the contract quoted in the findings.)
It will be observed that the Attorney General was not a party to the contract which, by the terms thereof, was made and entered into between the United States acting by the Secretary of the Treasury on the first part, and the plaintiff as of the second part. The obvious purpose of the project was to provide a reformatory in which prisoners committed under the Federal law could be confined. Manifestly the Attorney General’s department would be interested in the general nature of the scheme. Hence the contract required that he should approve the “development scheme” which comprised the preliminary plans or sketches required by division A. The contract provided that fees were not due *578 under division B until drawings, specifications, bills of quantities, etc., bad been accepted, and under division C until full size drawings in duplicate bad been accepted. It does not state definitely by whom, but in the absence of an express provision the acceptance would be by the other party to the contract which was the Secretary of the Treasury. If it had been intended that one not a party to the contract must manifest his approval, naturally it would have been so stated. It should also be noted that the construction which we have given to the contract was followed by the parties thereto as it was being carried out.
The opinion of the Assistant Attorney General further recites that the provision for arbitration does not cover the matters in dispute. The provisions of the contract with reference to this matter are not as definite as they should be. In two different places the abbreviation “etc.” is used instead of particular expressions, but on the whole it is quite clear (taking into consideration the circumstances of the case) that the intention of the parties to the contract was that if they were unable to agree as to what should be paid for work done under change orders, that is, work done after the approval of the drawings or specifications requiring the work to be done under other drawings or specifications, the compensation of the plaintiff was to be fixed by the Supervising Architect of the Treasury and that his decision should be binding upon both of the parties. In this connection we would say also that the testimony as a whole showed that the contingency provided for by the contract had taken place and we have so found.
It is true that the Treasury Department in consequence of the opinion of the Assistant Attorney General withdrew its recommendation of the payment of the amount found to be due by the Supervising Architect, but his finding was not withdrawn. Indeed we doubt whether it could be, and our conclusion is that it is binding on both parties.
The finding of the Supervising Architect of the Treasury specifically disposes of all claims of the plaintiff with reference to redesigns and working drawings for mess hall and kitchen and revision of design for school and auditorium. So far as the item of $1,724.80 claimed to be due by reason *579 of elimination by the defendant of ground lighting and garage and fire engine building is concerned, this was another change order. It was permitted by the contract and plaintiff did no work on these eliminated items other than the preliminary sketches called for under division A of the contract for which he was paid. Consequently there is nothing due thereon.
It may be questioned whether the claim for $3,520 for working drawings for a low-pressure steam-distribution system and centralized hot-water system was covered by the finding of the Supervising Architect, but in any event it was work which we think was contemplated and required by the original contract, and the first set of drawings was not approved by the Treasury because the cost of construction would have exceeded the amount allotted to that portion of the project. The second set of plans for the heating system was accepted, approved, and paid for although not used. Consequently there was nothing due thereon.
Judgment will be rendered in favor of the plaintiff for $10,420.44, which is the amount found due by the Supervising Architect. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.